IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **SANDRA SMART, ROBERT PAUL SMART, KENNEY BAIRE, and DIANE PALMERI,** | : | |
| **Plaintiffs,** | : | Civil Action No. 1:15-cv-1361-EGS |
| **vs.** | : | |
| **PROMONTORY FINANCIAL GROUP, LLC,** | : | |
| **Defendant.** | : | |

## FIRST AMENDED COMPLAINT

Plaintiffs Sandra Smart, Robert Paul Smart, Kenney Baire and Diane Palmeri

(collectively "Plaintiffs"), by and through undersigned counsel and pursuant to

Fed. R. Civ. P. 15(a)(1)(B), brings this First Amended Complaint against

Defendant Promontory Financial Group, LLC ("Promontory") and show the Court

as follows:

## INTRODUCTION

### 1.

Plaintiffs bring this FLSA action alleging that Defendant misclassified them as independent contractors in order to avoid paying them an overtime premium for hours they worked over 40 in a single workweek.

### 2.

Plaintiffs additionally assert claims against Promontory for violations of 26 U.S.C. § 7434 (civil damages for fraudulent filing of tax information returns) to recover no less than $5,000 per fraudulent filing or their actual damages, and their costs of litigation, including their reasonable attorney's fees.

## JURISDICTION AND VENUE

### 3.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA §16(b), 29 U.S.C. § 216(b), 28 U. S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

### 4.

Venue properly lies in the Unites States District Court for the District of Columbia under 28 U.S.C. § 1391 because Promontory is located and maintains its

headquarters within this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

## THE PARTIES

### 5.

Sandra Smart resides in Erie County, Buffalo, New York.

### 6.

Robert Paul Smart resides in Erie County, Buffalo, New York.

### 7.

Kenney Baire ("Mr. Baire") resides in Erie County, Buffalo, New York.

### 8.

Diane Palmeri ("Ms. Palmeri") resides in Erie County, Buffalo, New York.

### 9.

Promontory is a Delaware corporation which maintains its headquarters and principal offices within the District of Columbia.

### 10.

Promontory is subject to the personal jurisdiction of this Court.

### 11.

Promontory may be served with process through its Registered Agent Corporation Service Company 1090 Vermont Ave. N.W., Washington, DC 20005.

## FACTUAL ALLEGATIONS

12.

Promontory employed Sandra Smart as a Financial Consultant in Kalamazoo,

Michigan from approximately March 5, 2012 through April 14, 2012.

13.

Promontory employed Sandra Smart as a Consultant on the Senior Technical Team

in Miamisburg, Ohio from April 16, 2012 through January 7, 2013.

14.

At all times material hereto, Sandra Smart was an "employee" of Promontory as

defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

15.

At all times material hereto, Promontory was an "employer" of Sandra Smart as

defined in FLSA § 3(d), 29 U.S.C. §203(d).

16.

At all times material hereto, Sandra Smart was not exempt from the maximum

hour requirements of the FLSA by reason of any exemption.

17.

Promontory employed Robert Paul Smart as a Consultant on the Senior Technical

Team in Miamisburg, Ohio from September 1, 2012 through January 7, 2013.

18.

At all times material hereto, Robert Paul Smart was an "employee" of Promontory as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

19.

At all times material hereto, Promontory was an "employer" of Robert Paul Smart as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

20.

At all times material hereto, Robert Paul Smart was not exempt from the maximum hour requirements of the FLSA by reason of any exemption.

21.

Promontory employed Mr. Baire as a Consultant in Miamisburg, Ohio from September 17, 2012 through January 7, 2013.

22.

At all times material hereto, Mr. Baire was an "employee" of Promontory as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

23.

At all times material hereto, Promontory was an "employer" of Mr. Baire as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

24.

At all times material hereto, Mr. Baire was not exempt from the maximum hour

requirements of the FLSA by reason of any exemption.

25.

Promontory employed Ms. Palmeri as a Financial Consultant in Kalamazoo,

Michigan from approximately March 5, 2012 through April 14, 2012.

26.

Promontory employed Ms. Palmeri as a Consultant on the Senior Technical Team

in Miamisburg, Ohio from April 16, 2012 through January 7, 2013.

27.

At all times material hereto, Ms. Palmeri was an "employee" of Promontory as

defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

28.

At all times material hereto, Promontory was an "employer" of Ms. Palmeri as

defined in FLSA § 3(d), 29 U.S.C. §203(d).

29.

At all times material hereto, Ms. Palmeri was not exempt from the maximum hour

requirements of the FLSA by reason of any exemption.

30.

Defendant's website describes Promontory's business and expertise as follows:

> Promontory excels at helping companies resolve critical issues, particularly those with a regulatory dimension. Promontory professionals have unparalleled regulatory credibility and insight, and we provide our clients with frank, proactive advice informed by best practices and regulatory expectations.
>
> Promontory is a leading strategy, risk management, and regulatory compliance consulting firm focusing primarily on the financial services industry. Led by our Founder and CEO, Eugene A. Ludwig, former U.S. Comptroller of the Currency, our professionals have deep and varied expertise gained through decades of experience as senior leaders of regulatory bodies, financial institutions and Fortune 100 corporations. Promontory's reputation for excellence has fueled its growth since its launch in 2001. We resolve challenging national and cross-border issues in banking, securities, commodities, financial instruments, markets, and insurance. We help entities understand and implement global and national financial services regulatory directives. Our comprehensive knowledge of legislative, regulatory, and judicial practices that shape financial services regulation sets us apart.
>
> From offices in North America, Europe, Asia, Australia, and the Middle East, our professionals assist clients in more than 50 countries on six continents. Promontory's affiliates complement our global strengths by providing compliance technology, forensic tools, reporting, financing, and funding solutions. We innovate and create new ways clients can enhance their business operations and improve their financial performance.

31.

At all times material hereto, the work of Plaintiffs formed an integral part of of Defendant's business of providing regulatory compliance consulting services.

32.

Promontory has several business offices located internationally and nationally.

33.

From on or about August 2012 until January 7, 2013, Promontory was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

34.

During 2012, Promontory had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

35.

During 2013, Promontory had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

36.

During 2012, Promontory had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

37.

During 2013, Promontory had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

38.

During 2012, Promontory had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

39.

During 2013, Promontory had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

40.

At all times material hereto, Promontory was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

41.

At all times material hereto, Promontory required Plaintiffs to comply with its instructions about when, where, and how they were to perform their duties and reserved to itself the right to control how they achieved their work results.

42.

At all times material hereto Promontory, provided training to Plaintiffs so that they would perform their job duties for Promontory in the particular manner that Promontory required, rather than allowing them to determine and utilize their own methods for performing their services.

43.

At all times material hereto, Plaintiffs' work and services were integrated into Promontory's business operations and were important to the success and continuation of Promontory's business of providing regulatory compliance consulting services.

44.

At all times material hereto, Promontory required Plaintiffs to perform their

services for Promontory personally and did not permit them to hire, supervise, or

pay employees of their own to perform the services they provided to Promontory.

45.

At all times material hereto, Promontory set the hours and schedules which

Plaintiffs were required to work.

46.

At all times material hereto, Promontory required Plaintiffs to comply with a dress

code.

47.

At all times material hereto, Promontory required Plaintiffs to work full time for

Promontory.

48.

At all times material hereto, Promontory required Plaintiffs to work at the premises

that Promontory maintained for them to perform their work.

49.

At all times material hereto, Promontory determined the order or sequence in

which Plaintiffs were required to perform their tasks.

50.

At all times material hereto, Promontory required Plaintiffs to submit reports to Promontory concerning their work for Promontory.

51.

At all times material hereto, Promontory paid Plaintiffs on an hourly basis.

52.

At all times material hereto, Promontory reimbursed Plaintiffs for their business and travel expenses incurred in the course of performing their work for Promontory.

53.

At all times material hereto, Promontory reimbursed Plaintiffs for their housing expenses incurred in the course of performing their work for Promontory.

54.

At all times material hereto, Promontory supplied Plaintiffs with the tools, equipment and supplies that they required to perform their work for Promontory.

55.

At all times material hereto, Promontory supplied Plaintiffs with company issued laptop computers that Plaintiffs utilized to perform their work for Promontory.

56.

At no time material hereto did any of the Plaintiffs make or maintain a significant investment in any of the facilities or equipment that they used in performing their work for Promontory.

57.

At no time material hereto were any of the Plaintiffs able to earn any profit or suffer any loss other than by earning hourly wages for the time they worked for Promontory.

58.

At all times material hereto, Plaintiffs made their services available exclusively to Promontory and not to the general public.

59.

At all times material hereto, Promontory required that all ideas, know-how, processes, equipment, documents, designs, models, inventions copyrightable material and other tangible and intangible materials which Plaintiffs authored, prepared, created, made, delivered, conceived or reduced to practice in whole or in part in the course of working for Promontory were and would remain the sole and exclusive property of Promontory; would be considered works made for hire; and

required that Plaintiffs assign to Promontory , and waive for themselves, any rights to the works.

60.

At all times material hereto, Promontory reserved the right to terminate Plaintiffs' employment at any time, at its own convenience without incurring any liability except for the work performed and expenses already incurred before the termination.

61.

At all times material hereto, Promontory recognized Plaintiffs' rights to resign their employment at will.

62.

At all times material hereto Defendant possessed the requisite knowledge, skill and experience in federal financial and regulatory requirements to be aware of the federal case law and the Regulations and Regulatory Guidance published both by the Internal Revenue Service and the Wage and Hour Administrator of the U.S. Department of Labor, including but not limited to the "economic realities test" defining the factual standards required for properly classifying workers as independent contractors and of the legal and financial liabilities arising from intentionally misclassifying employees as independent contractors.

63.

At all times material hereto, despite Defendant's awareness that the facts of

Plaintiffs' employment circumstances did not meet the standards required for

properly classifying workers as independent contractors under the above-

referenced federal case law, regulations, and guidelines, Defendant wilfully,

intentionally, and recklessly misclassified Plaintiffs as independent

contractors with respect to their compensation and federal and state tax

classification.

64.

At all times material hereto Promontory was aware of the Fair Labor Standards Act

Requirement that it compensate non-exempt employees at one and one-half times

their regular hourly rates of pay for all time that it suffered or permitted its

employees to work over 40 hours per workweek.

65.

At all times material hereto, Promontory was aware that, as a matter of economic

reality, Plaintiffs were so dependent upon Promontory for their livelihoods that

they must be classified as employees rather than as independent contractors.

66.

At all times material hereto, Promontory was aware that, as a matter of economic reality, it exercised such controls over the terms and conditions of Plaintiffs' work that it must classify Plaintiffs as employees rather than as independent contractors.

67.

At all times material hereto, Promontory was aware that, as a matter of economic reality, Plaintiffs' were employees within the meaning of the Fair Labor Standards Act.

68.

At all times material hereto, Promontory required each Plaintiff to sign a "Consultant Agreement" in an attempt to deceive Plaintiffs into believing that they had forfeited their right to be classified as employees and paid minimum wages.

69.

At no time did Promontory rely on the advice of any legal counsel that Plaintiffs or individuals with duties similar to Plaintiffs' duties should properly be classified as independent contractors rather than as employees.

70. .

At no time did Promontory rely on any opinion, rule, or regulation propounded by the U.S. Department of Labor that Plaintiffs or individuals with similar duties to

Plaintiffs' duties should properly be classified as independent contractors rather than as employees.

71.

At all times material hereto, Promontory was aware but willfully disregarded the fact that it was misclassifying the Plaintiffs as independent contractors rather than as employees who were entitled to overtime compensation under the Fair Labor Standards Act in order to avoid paying Plaintiffs at one-and-one-half times their hourly rates of pay for all time they worked in excess of 40 hours in a pay period.

72.

At all times material hereto, Promontory was aware but showed reckless disregard for whether its actions in classifying Plaintiffs as independent contractors rather than as employees violated the Fair Labor Standards Act by paying Plaintiffs less than one-and-one-half times their hourly rates of pay for all hours they worked in excess of 40 hours per workweek.

73.

At all times material hereto, Promontory was aware but willfully disregarded the requirements of Fair Labor Standards Act that it compensate the Plaintiffs at one-and-one-half times their regular hourly rates of pay for all time that they worked in excess of 40 hours per workweek.

74.

At all times material hereto Promontory showed reckless disregard for whether it was violating the requirements of the Fair Labor Standards Act in failing to compensate Plaintiffs at one-and-one-half time their hourly rates of pay for all time they worked in excess of 40 hours in a pay period.

75.

During the relevant time period, Plaintiffs did not exercise discretion in making significant business decisions on behalf of Promontory or its clients.

76.

At all times relevant hereto, Plaintiffs' discretion is making decisions was limited and circumscribed by the policies and procedures set out by Promontory and its clients.

77.

Plaintiffs' primary duty was not exempt under the FLSA.

78.

During the relevant time period, Plaintiffs' primary duty was to review foreclosures processed by PNC bank for compliance with federal Regulations.

79.

At all times material hereto, Promontory required Plaintiffs to work Monday

through Thursday from 8:00 a.m. until 6:00 p.m., and on Friday from 8:00 a.m.

until 12:00 p.m.

80.

At all times material hereto, Promontory required Plaintiffs to work at least 44

hours during each work week.

81.

At all times material hereto, Sandra Smart worked some Saturdays on behalf of

Promontory.

82.

At all times material hereto, in addition to the hours referenced above, Sandra

Smart worked additional hours on approximately two (2) Saturdays per month that

she was employed on behalf of Promontory.

83.

At all times material hereto, on each such Saturday referenced above, Sandra

Smart worked approximately 6 hours on behalf of Promontory.

84.

At all times material hereto, in addition to the hours referenced above, Robert Paul

Smart worked approximately two (2) Saturdays per month that he was employed

on behalf of Promontory.

85.

At all times material hereto, on each such Saturday referenced above, Robert Paul

Smart worked approximately 6 hours on behalf of Promontory.

86.

At all times material hereto, Promontory required Plaintiffs to submit time cards at

the end of each workweek.

87.

At all times material hereto, Plaintiffs regularly and customarily were required to

work through their lunch periods, and were not permitted to take lunch breaks

without interruption to perform work on Promontory's behalf.

88.

At all times material hereto, Promontory classified Plaintiffs as Independent

Contractors.

89.

At all times material hereto Promontory wrongfully classified Plaintiffs as

Independent Contractors.

90.

At all times material hereto, as a matter of economic reality, Plaintiffs were

employees of Promontory.

91.

At all times material hereto, Promontory misclassified Plaintiffs as independent

contractors in an attempt to avoid the maximum hours provisions of the FLSA.

92.

In 2013, Promontory willfully filed IRS Form 1099-MISC with respect to Sandra

Smart with the Internal Revenue Service for tax year 2012.

93.

In 2014, Promontory willfully filed IRS Form 1099-MISC with respect to Sandra

Smart with the Internal Revenue Service for tax year 2013.

94.

By filing IRS Forms 1099-MISC with respect to Sandra Smart with the Internal

Revenue Service, Promontory classified Sandra Smart's earnings as nonemployee

income.

95.

By filing IRS Forms 1099-MISC with respect to Sandra Smart with the Internal

Revenue Service, Promontory misclassified Sandra Smart's earnings as

nonemployee income.

96.

For tax years 2012 and 2013 Promontory intentionally or recklessly misclassified

Sandra Smart's earnings as nonemployee income.

97.

For tax years 2012 and 2013 Promontory intentionally or recklessly misclassified

Sandra Smart's earnings as nonemployee income for the purpose of its own

enrichment and to avoid payment of taxes, including but not limited to payroll

taxes, worker's comopensation taxes, and unemployment taxes.

98.

In 2013, Promontory filed IRS Form 1099-MISC with respect to Robert Paul

Smart with the Internal Revenue Service for tax year 2012.

99.

In 2014, Promontory filed IRS Form 1099-MISC with respect to Robert Paul

Smart with the Internal Revenue Service for tax year 2013.

100.

By filing IRS Forms 1099-MISC with respect to Robert Paul Smart with the Internal Revenue Service, Promontory classified Robert Paul Smart's earnings as nonemployee income.

101.

By filing IRS Forms 1099-MISC with respect to Robert Paul Smart with the Internal Revenue Service, Promontory misclassified Robert Paul Smart's earnings as nonemployee income.

102.

For tax years 2012 and 2013 Promontory intentionally or recklessly misclassified Robert Paul Smart's earnings as nonemployee income.

103.

For tax years 2012 and 2013 Promontory intentionally or recklessly misclassified Robert Paul Smart's earnings as nonemployee income for the purpose of its own enrichment and to avoid payment of taxes, including but not limited to payroll taxes, worker's comopensation taxes, and unemployment taxes.

104.

In 2013, Promontory willfully filed IRS Form 1099-MISC with respect to Mr. Baire with the Internal Revenue Service for tax year 2012.

105.

In 2014, Promontory willfully filed IRS Form 1099-MISC with respect to Mr. Baire with the Internal Revenue Service for tax year 2013.

106.

By filing IRS Forms 1099-MISC with respect to Mr. Baire with the Internal Revenue Service, Promontory classified Mr. Baire's earnings as nonemployee income.

107.

By filing IRS Forms 1099-MISC with respect to Mr. Baire with the Internal Revenue Service, Promontory misclassified Mr. Baire's earnings as nonemployee income.

108.

For tax years 2012 and 2013 Promontory intentionally or recklessly misclassified Mr. Baire's earnings as nonemployee income.

109.

For tax years 2012 and 2013 Promontory intentionally or recklessly misclassified Mr. Baire's earnings as nonemployee income for the purpose of its own enrichment and to avoid payment of taxes, including but not limited to payroll taxes, worker's compensation premiums, and unemployment taxes.

110.

In 2013, Promontory filed IRS Form 1099-MISC with respect to Ms. Palmeri with the Internal Revenue Service for tax year 2012.

111.

In 2014, Promontory filed IRS Form 1099-MISC with respect to Ms. Palmeri with the Internal Revenue Service for tax year 2013.

112.

By filing IRS Forms 1099-MISC with respect to Ms. Palmeri with the Internal Revenue Service, Promontory classified Ms. Palmeri's earnings as nonemployee income.

113.

By filing IRS Forms 1099-MISC with respect to Ms. Palmeri with the Internal Revenue Service, Promontory misclassified Ms. Palmeri's earnings as nonemployee income.

114.

For tax years 2012 and 2013 Promontory intentionally or recklessly misclassified Ms. Palmeri's earnings as nonemployee income.

115.

For tax years 2012 and 2013 Promontory intentionally or recklessly misclassified

Ms. Palmeri's earnings as nonemployee income for the purpose of its own

enrichment and to avoid payment of taxes, including but not limited to payroll

taxes, worker's comopensation taxes, and unemployment taxes.

### COUNT I — FAILURE TO PAY OVERTIME AS TO PLAINTIFF SANDRA SMART

116.

The allegations in all previous paragraphs are incorporated by reference as if fully

set out in this paragraph.

117.

At all times material hereto, Sandra Smart was an employee covered by the FLSA

and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C.

§ 207(a).

118.

During her employment with Promontory, Sandra Smart regularly worked in

excess of forty (40) hours each week.

119.

Promontory failed to pay Sandra Smart at one-and-one-half times her regular rate for work in excess of forty (40) hours in any week from August 2012 through January 7, 2013.

120.

Promontory willfully failed to pay Sandra Smart at one-and-one-half times her regular rate for work in excess of forty (40) hours in any week from August 2012 through January 7, 2013.

121.

Sandra Smart is entitled to payment of overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

122.

As a result of Defendant's underpayment of overtime compensation as alleged above, Sandra Smart is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

123.

As a result of the underpayment of overtime compensation as alleged above, Sandra Smart is entitled to her litigation costs, including her reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT II – CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS (26 U.S.C. § 7434) AS TO PLAINTIFF SANDRA SMART

### 124.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

### 125.

At all times material hereto, Sandra Smart was an employee of Promontory rather than an independent contractor.

### 126.

At all times material hereto, Promontory classified Sandra Smart as an independent contractor, and not as an employee.

### 127.

At all times material hereto, Promontory misclassified Sandra Smart as an independent contractor.

### 128.

At all times material hereto, Promontory has intentionally, willfully, and fraudulently misclassified Sandra Smart as an independent contractor.

129.

In 2013, Promontory filed a Form 1099-MISC with the Internal Revenue Service categorizing all monies it paid to Sandra Smart in 2012 as nonemployee compensation.

130.

Promontory's classification of Sandra Smart's 2012 income as nonemployee compensation in the Form 1099-MISC was false and fraudulent.

131.

Promontory fraudulently misclassified Sandra Smart's 2012 income as nonemployee compensation for Promontory's own wrongful enrichment.

132.

In 2014, Promontory willfully filed a Form 1099-MISC with the Internal Revenue Service categorizing all monies it paid to Sandra Smart in 2013 as nonemployee compensation.

133.

Promontory's classification of Sandra Smart's 2013 income as nonemployee compensation in the Form 1099-MISC was false and fraudulent.

134.

Promontory fraudulently misclassified Sandra Smart's 2013 income as nonemployee compensation for Promontory's own wrongful enrichment.

135.

As a consequence of Promontory's willful filing of fraudulent tax information returns, Sandra Smart is entitled to recover damages from Promontory up to and including any actual damages sustained, or in any event not less than $5,000 per fraudulent filing, as well as costs of litigation and reasonable attorney's fees, pursuant to 26 U.S.C. § 7434.

## COUNT III — FAILURE TO PAY OVERTIME AS TO PLAINTIFF ROBERT PAUL SMART

136.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

137.

At all times material hereto, Robert Paul Smart was an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

138.

During his employment with Promontory, Robert Paul Smart regularly worked in excess of forty (40) hours each week.

139.

Promontory failed to pay Robert Paul Smart at one-and-one-half times his regular rate for work in excess of forty (40) hours in any week from August 2012 through January 7, 2013.

140.

Promontory willfully failed to pay Robert Paul Smart at one-and-one-half times his regular rate for work in excess of forty (40) hours in any week from August 2012 through January 7, 2013.

141.

Robert Paul Smart is entitled to payment of overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

142.

As a result of the underpayment of overtime compensation as alleged above, Robert Paul Smart is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

143.

As a result of the underpayment of overtime compensation as alleged above,

Robert Paul Smart is entitled to his litigation costs, including his reasonable

attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT IV – CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS (26 U.S.C. § 7434) AS TO PLAINTIFF ROBERT PAUL SMART

144.

The allegations in all previous paragraphs are incorporated by reference as if fully

set out in this paragraph.

145.

At all times material hereto, Robert Paul Smart was an employee of Promontory.

146.

At all times material hereto, Promontory classified Robert Paul Smart as an

independent contractor, and not as an employee.

147.

At all times material hereto, Promontory misclassified Robert Paul Smart as an

independent contractor.

148.

At all times material hereto, Promontory has intentionally, willfully, and

fraudulently misclassified Robert Paul Smart as an independent contractor.

149.

In 2013, Promontory filed an IRS Form 1099-MISC with the Internal Revenue

Service categorizing all monies it paid to Robert Paul Smart in 2012 as

nonemployee compensation.

150.

Promontory's classification of Robert Paul Smart's 2012 income as nonemployee

compensation in the Form 1099-MISC was false and fraudulent.

151.

Promontory fraudulently misclassified Robert Paul Smart's 2012 income as

nonemployee compensation for Promontory's own wrongful enrichment.

152.

In 2014, Promontory willfully filed an IRS Form 1099-MISC with the Internal

Revenue Service categorizing all monies it paid to Robert Paul Smart in 2013 as

nonemployee compensation.

153.

Promontory's classification of Robert Paul Smart's 2013 income as nonemployee compensation in the Form 1099-MISC was false and fraudulent.

154.

Promontory fraudulently misclassified Robert Paul Smart's 2013 income as nonemployee compensation for Promontory's own wrongful enrichment.

155.

As a consequence of Promontory's willful filing of fraudulent tax information returns, Robert Paul Smart is entitled to recover damages from Promontory up to and including any actual damages sustained, or in any event not less than $5,000 per fraudulent filing, as well as costs of litigation and reasonable attorney's fees, pursuant to 26 U.S.C. § 7434.

## COUNT V — FAILURE TO PAY OVERTIME AS TO PLAINTIFF MR. BAIRE

156.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

157.

At all times material hereto, Mr. Baire was an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

158.

During his employment with Promontory, Mr. Baire regularly worked in excess of

forty (40) hours each week.

159.

Promontory failed to pay Mr. Baire at one-and-one-half times his regular rate for

work in excess of forty (40) hours in any week from August 2012 through January

7, 2013.

160.

Promontory willfully failed to pay Mr. Baire at one-and-one-half times his regular

rate for work in excess of forty (40) hours in any week from August 2012 through

January 7, 2013.

161.

Mr. Baire is entitled to payment of overtime in an amount to be determined at trial,

in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

162.

As a result of the underpayment of overtime compensation as alleged above, Mr.

Baire is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C.

§ 216(b).

163.

As a result of the underpayment of overtime compensation as alleged above, Mr.

Baire is entitled to his litigation costs, including his reasonable attorney's fees in

accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT VI – CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS (26 U.S.C. § 7434) AS TO PLAINTIFF MR. BAIRE

164.

The allegations in all previous paragraphs are incorporated by reference as if fully

set out in this paragraph.

165.

At all times material hereto, Mr. Baire was an employee of Promontory.

166.

At all times material hereto, Promontory classified Mr. Baire as an independent

contractor, and not as an employee.

167.

At all times material hereto, Promontory misclassified Mr. Baire as an independent

contractor.

168.

At all times material hereto, Promontory has intentionally, willfully, and

fraudulently misclassified Mr. Baire as an independent contractor.

169.

In 2013, Promontory filed a Form 1099-MISC with the Internal Revenue Service

categorizing all monies it paid to Mr. Baire in 2012 as nonemployee compensation.

170.

Promontory's classification of Mr. Baire's 2012 income as nonemployee

compensation in the Form 1099-MISC was false and fraudulent.

171.

Promontory fraudulently misclassified Mr. Baire's 2012 income as nonemployee

compensation for Promontory's own wrongful enrichment.

172.

In 2014, Promontory willfully filed a Form 1099-MISC with the Internal Revenue

Service categorizing all monies it paid to Mr. Baire in 2013 as nonemployee

compensation.

173.

Promontory's classification of Mr. Baire's 2013 income as nonemployee

compensation in the Form 1099-MISC was false and fraudulent.

174.

Promontory fraudulently misclassified Mr. Baire's 2013 income as nonemployee compensation for Promontory's own wrongful enrichment.

175.

As a consequence of Promontory's willful filing of fraudulent tax information returns, Mr. Baire is entitled to recover damages from Promontory up to and including any actual damages sustained, or in any event not less than $5,000 per fraudulent filing, as well as costs of litigation and reasonable attorney's fees, pursuant to 26 U.S.C. § 7434.

## COUNT VII — FAILURE TO PAY OVERTIME AS TO PLAINTIFF MS. PALMERI

176.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

177.

At all times material hereto, Ms. Palmeri was an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

178.

During her employment with Promontory, Ms. Palmeri regularly worked in excess

of forty (40) hours each week.

179.

Promontory failed to pay Ms. Palmeri at one and one half times her regular rate for

work in excess of forty (40) hours in any week from August 2012 through January

7, 2013.

180.

Promontory willfully failed to pay Ms. Palmeri at one and one half times her

regular rate for work in excess of forty (40) hours in any week from August 2012

through January 7, 2013.

181.

Ms. Palmeri is entitled to payment of overtime in an amount to be determined at

trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

182.

As a result of the underpayment of overtime compensation as alleged above, Ms.

Palmeri is entitled to liquidated damages in accordance with FLSA § 16(b), 29

U.S.C. § 216(b).

183.

As a result of the underpayment of overtime compensation as alleged above, Ms.

Palmeri is entitled to his litigation costs, including her reasonable attorney's fees in

accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT VIII – CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS (26 U.S.C. § 7434) AS TO PLAINTIFF MS. PALMERI

184.

The allegations in all previous paragraphs are incorporated by reference as if fully

set out in this paragraph.

185.

At all times material hereto, Ms. Palmeri was an employee of Promontory.

186.

At all times material hereto, Promontory classified Ms. Palmeri as an independent

contractor, and not as an employee.

187.

At all times material hereto, Promontory misclassified Ms. Palmeri as an

independent contractor.

188.

At all times material hereto, Promontory has intentionally, willfully, and

fraudulently misclassified Ms. Palmeri as an independent contractor.

189.

In 2013, Promontory filed a Form 1099-MISC with the Internal Revenue Service

categorizing all monies it paid to Ms. Palmeri in 2012 as nonemployee

compensation.

190.

Promontory's classification of Ms. Palmeri's 2012 income as nonemployee

compensation in the Form 1099-MISC was false and fraudulent.

191.

Promontory fraudulently misclassified Ms. Palmeri's 2012 income as nonemployee

compensation for Promontory's own wrongful enrichment.

192.

In 2014, Promontory willfully filed a Form 1099-MISC with the Internal Revenue

Service categorizing all monies it paid to Ms. Palmeri in 2013 as nonemployee

compensation.

193.

Promontory's classification of Ms. Palmeri's 2013 income as nonemployee compensation in the Form 1099-MISC was false and fraudulent.

194.

Promontory fraudulently misclassified Ms. Palmeri's 2013 income as nonemployee compensation for Promontory's own wrongful enrichment.

195.

As a consequence of Promontory's willful filing of fraudulent tax information returns, Ms. Palmeri is entitled to recover damages from Promontory up to and including any actual damages sustained, or in any event not less than $5,000 per fraudulent filing, as well as costs of litigation and reasonable attorney's fees, pursuant to 26 U.S.C. § 7434.

WHEREFORE, Plaintiffs respectfully pray:

1.    That Plaintiffs' claims be tried before a jury;

2.    That Plaintiffs be awarded an amount to be determined at trial against Defendant in unpaid overtime compensation due under the FLSA, plus an additional like amount in liquidated damages;

3.      That Plaintiffs be awarded no less than $5,000 for each fraudulent tax

         information return filed with respect to them by Defendant;

4.      That Plaintiffs be awarded costs of litigation, including their reasonable

         attorneys' fees from Defendant; and

5.      For such other and further relief as the Court deems just and proper.


This  7th day of January 2016.

                                        Respectfully submitted,


                                        **MCINROY & RIGBY, L.L.P.**


                                        */s/ John J. Rigby*
2200 Clarendon Boulevard, Suite 1201    John J. Rigby
Arlington, VA 22201                     D.C. Bar No. 255539
(703) 841-1100
(703) 841-1161 (f)                      Counsel for Plaintiffs
jrigby@mcinroyrigby.com

## CERTIFICATE OF SERVICE

I hereby certify that on this day I filed the foregoing document through the Court's ECF system, which will provide notice to all parties indicated on the electronic filing receipt.

Dated: January 7,  2016.

> */s/ John J. Rigby*
> John J. Rigby
> D.C. Bar No. 255539
> McInroy & Rigby, LLP
> 2200 Clarendon Blvd, Suite 1201
> Arlington, Virginia 22201
> (703) 841-1100
> (703) 841-1161 (fax)
> jrigby@mcinroyrigby.com